THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v.
JOSÉ CARTAGENA, Defendant and Appellant.

No. 7417. Argued March 17, 1939.—Decided May 22, 1939.

*Joaquín Velilla*, for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

José Cartagena was accused of an offense of attempt to kill in that on January 26, 1936, in the ward Vista Alegre of Bayamón, he illegally, voluntarily, with malice aforethought and with a firm intention of killing Gerónimo Colón, attacked him with a revolver, shooting at him once and wounding him in the abdomen with the intention of killing him.

The evidence of the prosecuting attorney tends to show that the shooting occurred in the following manner: On the 26th of January 1936, José Cartagena was on the balcony of his home in the ward Vista Alegre of Bayamón preparing a list of peons which at his request he was going to submit to Félix Alvarez, who was going to give them work in the farms which he owns in Bayamón. In front of the balcony of his house there was a group of twenty or twenty-five persons who wished to be included in said list. Cartagena's purpose was to select the peons from amongst those persons who belonged to the Liberal Party. At that moment the workman José Rivera Morales passed in front of Cartagena's home and, together with others, he drew near to the group from which Cartagena was selecting the peons and Cartagena said: "Let no socialist or republicans draw near, this is only for the liberals." José Rivera Morales thought that the list was being prepared for work in the P.R.R.A. He protested against only liberals being chosen and due to this a discussion between Cartagena and Rivera Morales arose wherein they directed vile and injurious words to each other. In view of these words Cartagena, who was still in the balcony of his house, drew his revolver and shot at Rivera Morales, who was on the ground near the group. The bullet wounded him in the ear and at the same time wounded Geró-

nimo Colón, who was at some distance from the group watching the happenings.

The evidence of the accused tends to establish self-defense when evidence is presented in the sense that Rivera Morales first provoked Cartagena for not having placed him in the list and later, returning to the place accompanied by some of his family and armed with a knife, he opened the gate of the fence and tried to pass to the balcony of Cartagena to assault him, and that the latter, in defense of his life, asked his wife for his revolver then firing the shot, the results of which we know.

The jury who heard the case found him guilty of aggravated assault and battery and he was condemned to one year in jail.

Cartagena appealed to this court. He bases his appeal on eleven errors, which he alleges were committed by the lower court. The first five and the last are intimately related. We shall discuss them together. They read as follows:

"1. The lower court erred in dismissing a motion to strike filed by the defense when the witness of the prosecution Gerónimo Colón was testifying.

"2. The lower court erred in permitting over the objection of the defense that the witness José Rivera Morales testify as to the differences between him and the accused and which originated the assault in the present case.

"3. The lower court erred in denying a motion to strike after the defense requested the reconsideration as regards the testimony of José Rivera Morales.

"4. The lower court erred in denying the motion of nonsuit presented by the accused when the prosecution terminated his case.

"5. The lower court erred when the Judge gave the following instruction to the jury: 'Although in express malice an intention to kill is necessary, nevertheless it is not necessary that the intention to kill be directed against a particular person. If the act committed by the accused was directed against another person, he is as responsible as though he had committed it against said person.'

"11. The verdict brought by the jury who heard the case in the lower court is against the law and the evidence."

■ The decision of the six assignments of error herein grouped depends on the manner of answering the following question: In an indictment for murder in which *C* is accused of illegally, voluntarily, with malice aforethought and with firm intention of killing *B,* is evidence admissible tending to show that the death of *B* resulted incidentally while *C,* in an illegal manner and with malice aforethought, assaulted *A* with the firm and deliberate intent of killing him?

The principle of constructive intent has such profound roots in the common law that there is no necessity to cite authorities to uphold it; but the question raised by the appellant is not of substantive law but of adjective law, particularly of evidence in criminal cases. While all the authorities are agreed that if a person with the intent to kill another person attacks him and incidentally kills a third person against whom he had no intention of doing harm, he is as guilty as though the deceased were the person against whom his assault was directed, they are not, nevertheless, in harmony as regards the question of evidence raised by the appellant in this appeal.

The question is not new in this jurisdiction. In the case of *People* v. *Estrella,* 42 P.R.R. 331, the indictment alleged that the accused had illegally and voluntarily committed an assault and battery with a revolver with the intent to cause grave bodily harm to Gustavo Palés Matos, firing various shots, one of which wounded him in the right arm, etc. The evidence showed nevertheless that the accused was then an insular policeman "who was pursuing a certain individual whom he had reason to suppose had committed a robbery and who on arriving at the entrance to the police station struck him and ran; that the wounded man, Gustavo Palés Matos, was seated in an automobile when Estrella fired his revolver twice and one of the bullets hit Palés who was strange to the escape of the arrested person." The accused was convicted first by the municipal court and later by the district court, and when he appealed from the judgment of the latter

court, he alleged as first error the fact that he was convicted without any intention on his part to cause Gustavo Palés Matos grave harm having been proved. In discussing said first error this court said:

"It is an old and constant doctrine of the law and the jurisprudence, that every person is presumed to intend the natural consequences of his acts. One who fires a revolver at a certain person and wounds another, is criminally liable, whether homicide or mere bodily injury be the result of the shot."

In the case of *People* v. *Cabán*, (1931) 45 P.R.R. 210, Cabán was accused of an attempt to kill, consisting in that "on the 20th of April, 1930, he illegally, voluntarily and maliciously, with premeditation and a deliberate intent to kill the human being Rosario Rodríguez, assaulted him with a revolver and seriously wounded him with the intention of committing murder." In the appeal filed in this court, in considering the third, fourth and fifth assignment of error, this court said:

"The above three assignments may be jointly considered, inasmuch as all of them rest on the theory that it has not been proved that the appellant assaulted Rosario Rodríguez with a revolver and wounded him deliberately with the intent to commit murder, since the evidence tended to show that the assault and the shot of the revolver were intended for César Rodríguez, and that the fact that Rosario was wounded occurred because the bullet swerved and injured him accidentally.

"The appellant cites in support of his contention the decisions mentioned in some footnotes to the text in 30 C. J. 25, section 167(h), to show that where an accused attempts to murder a person but wounds another, he cannot be convicted of murder or of assault with intent to murder the person wounded; but the appellant disregards other decisions to the contrary which are cited in the same section of Corpus Juris, and according to which where a man deliberately shoots at one person but misses him and wounds another, he may be convicted of assault with intent to murder the person injured, or of assault with intent to kill him, when that is the offense charged; which decisions are based upon different theories, one of them being that there are statutes which do not in terms confine the intent to kill

the person assaulted. It is provided in subdivision 8 of section 38 of the Penal Code that if the act committed was intended for another, the person committing the offense is answerable as though it was committed against the person intended. In accordance with such provision and inasmuch as the act of the appellant was intended for César Rodríguez, he may be held equally answerable for the serious wound inflicted upon Rosario Rodríguez as for the attempt against César Rodríguez. In *People* v. *Estrella,* 42 P.R.R. 331, we affirmed a judgment of conviction against Estrella for his having shot at one person and wounded by chance a third person; and we said that it is an old and constant doctrine of the law and jurisprudence, that every person intends the natural consequences of his acts; and that one who fires a revolver at a certain person and wounds another, is criminally liable, whether homicide or mere bodily injury be the result of the shot. . ."

In the case of *Carpio* v. *State,* (1921) 18 A.L.R. 914 (199 P. 1012), the Supreme Court of New Mexico decided an identical question in the same manner. The facts in the case were as follows: On August 4, 1919, the appellant went to a dance in the town of Central, County of Grant, in New Mexico. Carpio invited a young woman by the name of Julia Olguín to dance and she refused. He then said to her that if she would not dance with him she could not dance with anyone. Later she began to dance with Casamero Lucero and the appellant took hold of Lucero, slapped him in the face and pushed him and some other individuals threw him out and closed the door. Later Efren Ríos entered the dance hall and told Lucero that Carpio, the appellant, wished to see him outside. Lucero went out followed by Ríos and approached the appellant, but went he was approximately fourteen or fifteen paces from the latter, the appellant told him to stop and immediately thereafter fired against Lucero and the bullet hit Ríos and killed him.

The first question raised by the accused was that there was a fatal incongruency between the indictment and the evidence presented by the prosecuting attorney, since the indictment alleged that the accused criminally, voluntarily and

deliberately, with malice aforethought and with the deliberate intent then and there of illegally and maliciously killing Efren Ríos, assaulted and fired against said Ríos and that as a result of the wound received the latter died, while the evidence showed that the malice and deliberation were directed against Lucero and not against Ríos. In deciding the question said court stated:

". . . There is no merit in this argument, however, because under the law the malice and deliberation were transferred from Lucero to Ríos. In other words, the malice followed the bullet. In *Wharton on Homicide* (3d Ed.) sec. 359, the author says: 'The rule is nearly, if not quite, universal that one who kills another, mistaking him for a third person whom he intended to kill, is guilty or innocent of the offense charged the same as if the fatal act had killed the person intendend to be killed. . . And a charge that murder was done willfully, deliberately, and premeditatedly, and with malice aforethought, is sustained by proof that it was committed with a mind imbued with these qualities, though they were directed against a person other than the one killed.' "

In the body of its opinion the Supreme Court of New Mexico cites with approval the case of *Brooks* v. *State,* 141 Ark. 57, wherein the facts are substantially the same as those in the present case and where the court held that the indictment in such cases should allege that the assault was made against the murdered party as though in all respects the deceased had been the person against whom the accused fired. The same doctrine was upheld by the Supreme Court of Missouri in the case of *State* v. *Clark,* 147 Mo. 20, 47 S. W. 886.

The doctrine laid down by this court in the cases of Estrella and Cabán, supra, is upheld by the immense majority of the modern jurisprudence. To this effect see *People* v. *Weeks,* (1930, Cal.) 286 P. 514, 515; *Caraway* v. *State,* (1923, Tex.) 263 S. W. 1063, 1064; *Agent* v. *State,* (1921, Okla.) 194 P. 233, 238; *State* v. *Gallagher,* (1921, N. J.) 85 A. 207; *Ware* v. *State,* (1930, Okla.) 288 P. 374, 383; and *Jones* v.

*State,* (1921 Tex.) 231 S. W. 122, 124. Finally, *Underhill on Criminal Evidence,* referring to the same question, says that the modern tendency is to avoid a failure of justice for mere technicalities. See the fourth edition of said work, published in 1935, Section 86, page 109.

The evidence in the present case was contradictory as regards the self-defense, since from the testimony of the witnesses of the prosecuting attorney it does not appear that the accused acted in self-defense, while the testimony of the latter and that of his only witnesses who testified tended to show that he fired against Rivera Morales while the latter attempted to attack him with a knife. The jury, in weighing the evidence, decided the conflict against the accused and it has not been shown that in so doing it was influenced by passion, prejudice or partiality nor that it committed a manifest error in the weighing of the evidence. Therefore, having applied the law in the instructions which were given to them by the court, to the evidence, we must conclude that the verdict is not contrary to the evidence nor against the law.

█ We shall change the order in which the appellant has made the other assignments of error. We shall first consider the ninth assignment to then take the rest in their stated order.

The ninth assignment of error says:

"The lower court committed a manifest error in not making a summary of the evidence presented to the jury."

Paragraph 8 of Section 233 of the Code of Criminal Procedure (1935 ed.) provides that in delivering his instructions to the jury the presiding judge shall make a summary or analysis of all the evidence presented by the prosecuting attorney as well as by the defense. This summary of the evidence, heard from the lips of an expert and who has no interest in the result of the trial except that complete justice according to the law be done, is of inestimable value in helping the jury to comply with their difficult and delicate

mission, for it serves a double purpose: it refreshes the minds of the jury, especially in those cases in which a lot of evidence has been presented and frequently interrupted by incidents which tend to distract the jury's attention, and it also guides and directs the minds of the jury to the essential facts of the case, on which its verdict is to be based. In cases such as the present where evidence is short and not complicated, the judges frequently do not make the summary or analysis of the evidence because they consider it unnecessary. In thus proceeding they do not fall in error which will cause a reversal, unless after having been asked to make said summary, they refuse to do so and an exception is taken against said denial, keeping always in mind that no error will cause a reversal of the judgment when the substantial rights of the party have not been prejudiced. *People* v. *Ortiz,* 19 P.R.R. 289. See also the first section of the "Act relating to the reversal of judgments in criminal cases by the Supreme Court", approved on May 30, 1904, in the special session of that year and which is found in the Special Session Laws' of 1904, page 10, and which literally reads as follows:

"Section 1.—Wenever it appears from the record in any criminal case upon appeal in the Supreme Court, that any requirement of the law has been disregarded by the trial court, the judgment shall not be reversed, unless the error appearing from the record *was calculated to injure the right of either of the parties, and was duly excepted to in the trial court;* Provided, however, that the appellate court may take cognizance of *fundamental errors,* appearing in the record, *although not excepted to,* and render such judgment thereon as the facts and the law may require." (Italics supplied.)

As the omission of the summary or analysis of the evidence does not constitute a fundamental error and as it does not appear from the record that the defense brought this fact to the attention of the court and that it took exception to its denial, the accused has no right to assign said error on appeal.

■ The correctness or sufficiency of the instructions to the jury is not decided by considering and analyzing a certain instruction separate from the others, but by considering them as a whole, since what is said in one may explain clearly or rectify what has been incorrectly stated or omitted in another. We have examined the instructions in this case carefully and we do not find in them any error which would justify a reversal.

In our opinion the ninth error assigned by the defense does not exist.

■ The assignments of error marked six and seven are intimately related and refer to the instructions in regard to self-defense. We shall consider them jointly:

"*Sixth.*—The lower court committed error when, referring to self-defense, the judge delivered the following instruction to the jury: 'The theory of defense of habitation makes the rule of self-defense more strict. The law considers as a circumstance which will justify a homicide the fact that it is committed in defense of a habitation or home against someone who intends or tries by means of violence or surprise to commit a felony; or the fact that an attempt is made to violently enter a habitation or home of another for the purpose of assaulting any person who may be found therein.'

"*Seventh.*—The lower court committed error when instructing the members of the jury as to the verdicts which they could consider, the judge expressed himself in the following terms: 'If on the contrary you believe that according to the theory of the accused and the whole evidence of the case the accused acted in self-defense *and* in defense of his habitation, then your verdict shall be not guilty.' "

The defense alleges under its sixth assignment of error that the court erred in its instructions in referring to the defense of habitation, stating that in such case "the rule of self-defense is more strict."

Aside from the fact that we can not be sure what the jury understood by the phrase *"the theory of defense of habitation, of self-defense: this last circumstance makes the rule of self-defense more strict"*, and, therefore, we can not determine what prejudice might have been done to the accused

as a result of said instruction, if all the instructions on self-defense are examined, especially in regard to self-defense within the home, it will be seen that they correctly state the law on the matter. The instructions states thus:

"The theory within the habitation of self-defense: this last circumstance makes the rule of self-defense more strict. The law considers as a circumstance to justify a homicide the fact that it is committed in the defense of a habitation or home against someone who intends by means of violence or surprise to commit a felony; or who intents to violently enter a habitation or home of another with the purpose of assaulting some person found therein." (Judgment roll, page 70.)

This instruction is more clear if it is studied together with the following:

"In this case the theory of self-defense has also been alleged. A person against whom a harm is intended may oppose the necessary resistance to avoid an assault upon his person and a person who is assaulted by another is not bound to retreat, hide himself or run away though the streets to avoid the person who assaults him." (Judgment roll, page 67.)

In our opinion the sixth of the assigned errors was not committed.

 In his argument of the seventh assignment of error the appellant sustains that "at no moment was it alleged by anyone before the court appealed from that José Rivera Morales intended to attack the home of the accused if it were not for the natural inference that when the dweller is attacked the dwelling where he is attacked is affected." The appellant also sustains that the conjunction "and" which we put in italics in transcribing the impugned instruction caused the accused serious prejudice because it indicated to the jury that to acquit the accused under the theory of self-defense they had to consider proven that the accused acted in defense of his person and also in defense of his home.

In regard to the first objection, it would be sufficient to state that the defense of the home is not limited to a case

where the house in which the accused lives is about to be destroyed, but that it includes the defense of any person, whether or not the accused, who may be attacked while in the latter's home. *People* v. *Méndez,* 40 P.R.R. 727; *People* v. *Gómez,* 47 P.R.R. _____. As we have seen, the evidence of the defense tends to show that the accused was on the balcony of his house when he fired against Rivera Morales when the latter tried to attack him with a knife.

In regard to the second objection, assuming that the conjunction "and" is not a mistake of the stenographer in copying the transcript, if this is considered together with the other instructions given in regard to self-defense, it is easily seen that it was not the intention of the judge to say, nor could the jury understand, that in order that the accused might successsfully allege self-defense, it is necessary that he has attacked in defense of his life and also in defense of his home. If this error was really committed, why did the defense not immediately call the attention to the judge so that he could correct it? It does not appear either that the defense took an exception to the instructions relating to self-defense. His only exceptions were the following:

"The defense takes exception to the instructions given by the court on murder and homicide, as well as on the verdicts that the jury may bring, because we understand that under this indictment which is being heard, there can only be three verdicts: 1, guilty of attempt to kill; 2, guilty of aggravated assault and battery; 3 not guilty.

"And that the instructions in regard to other verdicts and other crimes are confusing to the members of the jury and thereby influencing the minds of the jury in considering the evidence presented in the case in regard to the verdict which they should bring."

The exceptions to the instructions should specifically point out the error that the party believes was committed in order to give the court a reasonable opportunity to reconsider them and to rectify if it is convinced that the instruction given was erroneous or was not sufficiently clear or exact. The

840

law in regard to self-defense is sufficiently broad. It includes different cases and in a case such as the present in which the judge instructed in regard to all the kinds of this defense, it would have been difficult for him to notice any error in the same if the defense had simply taken an exception to the instructions of self-defense without specifying or pointing out the error on which they based their exception.

■■ The eighth assignment of error states as follows:

"The lower court erred when, in giving the final instructions, the Judge stated as follows: 'If you have a doubt, whatever it may be, that the accused has committed any of these crimes that I have specified, but there is a doubt in regard to the degree in which he may have incurred criminal responsibility, it is then your duty to give the benefit of that doubt to the accused and to declare him guilty of the crime of lesser degree.' '"

In arguing this assignment of error the defense says:

"In this instruction the members of the jury are told that if they have some doubt in regard to whether the accused committed any of the crimes defined by the judge of the lower court, that it is their duty to find him guilty of the crime of lesser degree, instead of instructing them that in the case of doubt as to whether the accused committed any of them, it was their duty to give him the benefit of the doubt and acquit him freely."

If the instructions of the court are examined carefully it would be seen that they include an ample instruction in regard to the presumption of innocence in favor of the accused and in regard to reasonable doubt. Therefore, this instruction should be analyzed and studied together with the rest of the instructions given in regard to reasonable doubt and to the presumption of innocence. As we said before, the accused did not point out in a specific manner in taking his exception, in what the defect consisted of said instruction. On the contrary the limited himself to say "*that the instructions in regard to other verdicts and other crimes are confusing to the members of the jury and thereby influencing the minds of the jury in considering the evidence presented in the case*

*in regard to the verdict which they should bring.''* (Italics supplied.)

In this respect the following phrase of the eminent Judge Cardozo is very much in point:

''The law . . . is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolable and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.'' *Snyder* v. *Massachusetts*, 291 U. S. 97, 122.

The tenth assignment of error, the last which we consider, states thus:

''The lower court committed error in instructing the members of the jury as regard to the different verdicts which they might bring.''

In arguing this assignment of error the defense alleges that the court, taking in consideration the evidence in this case, should not have given instructions in regard to assault to commit homicide. In this case the indictment is for an attempt to kill. The accused alleged self-defense and at the same time provocation on the part of the person against whom he fired. In such circumstances it is undoubted that an instruction in regard to voluntary homicide should be given, since if Jerónimo Colón had died, from the evidence there would have been sufficient basis to uphold a verdict of voluntary homicide. But since he did not die, the jury could bring a verdict of assault with intent to commit homicide. But no matter what the rule is, the question is academic since the jury brought a verdict of aggravated assault and battery and the accused could in no way have been prejudiced by the instructions in regard to assault with the intent to commit homicide, since the jury concluded that said crime had not been committed.

Since the errors assigned by the appellant do not exist, the appeal should be dismissed and the judgment appealed from affirmed.